# In the United States Court of Federal Claims

| | | |
|---|---|---|
| STACY WYBLE,<br><br>Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | ) | No. 23-12V<br>(Filed under seal: October 2, 2026.<br>Reissued for Publication:<br>November 2, 2026)* |

David John Carney, Green & Schafle LLC, Philadelphia, PA, with whom were Isaiah Kalinowski, Bosson Legal Group, Fairfax, VA, for Petitioner.

James Connor Daughton, Trial Attorney, Torts Branch, Civil Division, U.S. Department of Justice, Washinton, DC, with whom were Tyler King, Trial Attorney, Gabrielle M. Fielding, Assistant Director, Heather L. Pearlman, Deputy Director, Jonathan D. Guynn, Acting Director, and Brett A. Shumate, Assistant Attorney General, for Respondent.

## OPINION AND ORDER

**KAPLAN, Judge.**

This case arises under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 ("Vaccine Act"). Petitioner, Stacy Wyble, alleges that she developed chronic inflammatory demyelinating polyradiculoneuropathy ("CIDP"), a rare and chronic autoimmune condition, as a result of receiving a tetanus, diphtheria, and acellular pertussis ("Tdap") vaccine. In this action, Ms. Wyble challenges the decision of Chief Special Master Brian Corcoran ("the CSM") finding Ms. Wyble not entitled to compensation under the Vaccine Act because she did not satisfy either of two independent prongs required to establish causation under Althen v. Secretary of Health & Human Services, 418 F.3d 1274 (Fed. Cir. 2005). Specifically, the CSM found Ms. Wyble failed to supply preponderant evidence of (1) "a medical theory causally connecting the vaccination and [her] injury" (Althen prong 1) and (2) "a logical sequence of cause and effect showing that the vaccination was the reason for [her] injury" (Althen prong 2). Gamboa-Avila v. Sec'y of Health & Hum. Servs., 166 F.4th 1318, 1320 (Fed. Cir. 2026) (quoting Althen, 418 F.3d at 1278).

Ms. Wyble has moved for review of the CSM's decision. She contends the CSM applied too stringent a burden of proof when reviewing the adequacy of her theory of general causation

* Pursuant to Vaccine Rule 18(b), this Opinion was initially filed on October 2, 2026, and the parties were afforded fourteen days to propose redactions. The parties did not propose any redactions. However, the Court noticed a typographical error in the subtitle of Discussion Section II.B. This error has been corrected, and this Opinion is otherwise reissued for publication in its original form.

under Althen prong 1. Specifically, she asserts that the CSM should have applied a standard of "biological plausibility" when determining whether she had proven her medical theory of causation by preponderant evidence. Mem. of Obj. in Supp. of Pet'r's Mot. for Rev. of the Spec. Mstr.'s Decision of Feb. 27, 2026 at 8–16 [hereinafter Pet'r's Mem.], ECF No. 47-1. She further contends that the CSM failed to consider certain research her expert conducted, which she alleges supports her theory of general causation based on molecular mimicry and that—by relying on his prior decisions when reviewing that theory—the CSM improperly "appl[ied] the doctrine of stare decisis to scientific factual matters." Id. at 3, 4–8.

Notably, Ms. Wyble's motion for review contains no objection or challenge to the CSM's determination that she did not meet her burden under Althen prong 2 to show specific causation. For the reasons set forth below, her failure to challenge this aspect of the CSM's decision is fatal to her motion for review. Even assuming the CSM erred in his evaluation of Althen prong 1 (and the Court is not persuaded that he did), Ms. Wyble was required to prove "all three Althen prongs by a preponderance of the evidence" to establish her entitlement to compensation. Cerrone v. Sec'y of Health & Hum. Servs., 146 F.4th 1113, 1120 (Fed. Cir. 2025) (quoting Boatmon v. Sec'y of Health & Hum. Servs., 941 F.3d 1351, 1355 (Fed. Cir. 2019)) (citing Oliver v. Sec'y of Health & Hum. Servs., 900 F.3d 1357, 1361 (Fed. Cir. 2018)). Her motion for review must therefore be **DENIED**.

## BACKGROUND

### I. Ms. Wyble's Vaccination and Illness

Ms. Wyble received a Tdap vaccine in her left deltoid on November 15, 2020. Wyble v. Sec'y of Health & Hum. Servs., No. 23-12V, 2026 WL 822766, at *1 (Fed. Cl. Spec. Mstr., Feb. 27, 2026) [hereinafter Decision] (citing Ex. 1, at 2, ECF No. 5-1). At that time, Ms. Wyble suffered from several health conditions, including, among others, arthritis, chronic gluteal pain, fibromyalgia, degenerative disk disease, herniated disks, swelling in her right leg, severe acid reflux, and thyroid issues. Id.

On December 3, 2020—thirteen days after she received the Tdap vaccination—Ms. Wyble reported to her primary care provider that she had been experiencing chills, fatigue, and diarrhea for two days. Id. at *2 (citing Ex. 5, at 59–63, ECF No. 5-5). He diagnosed her as suffering from a viral illness. Id.

A few weeks later, on December 18, 2020, Ms. Wyble returned to her primary care provider complaining of an all-body tingling sensation, cold tingling fingers, cold lips, pain with movement, and painful breathing. Id. (citing Ex. 5, at 51–58). On December 22, 2020, Ms. Wyble visited her neurologist. Id. (citing Ex. 11, at 29–30, ECF No. 6-1). She reported new symptoms, chief among them burning and numbness affecting her limbs, face, and lips. Id. Ms. Wyble's neurologist diagnosed her as suffering from fibromyalgia and myofascial pain. Id. He further noted that given Ms. Wyble's diminished sensation and reflexes in her feet, knees, and ankles, she should be evaluated to rule out polyneuropathy. Id.

A week later, on December 29, 2020, Ms. Wyble went to the emergency room complaining of bilateral numbness in her hands. Id. at *3 (citing Ex. 9, at 357, ECF No. 5-9). She also reported difficulty walking and weakness. Id. At the hospital, she saw a new neurologist who directed that she undergo EMG testing within the next two weeks. Id. (citing Ex. 9, at 374).

Six days later, on January 4, 2021, Ms. Wyble saw a third neurologist for EMG testing. Id. at *3 (citing Ex. 11, at 38–40). While Ms. Wyble continued to report progressive weakness, difficulty walking, and areflexia, her neurologist concluded that the EMG testing did not "provide any electrophysiologic evidence to support a generalized neurogenic or myopathic process affecting the peripheral nervous system." Id. (citing Ex. 11, at 38).

On the next day, January 5, 2021, Ms. Wyble was again hospitalized complaining of numbness and ambulatory issues. Id. at *3–4. The hospital discharged her to a rehab center where she remained until January 15, 2021. Id. at *4 (first citing Ex. 9, at 95; and then citing Ex. 11, at 66–68).

By April 5, 2021, a neurologist had proposed that Ms. Wyble might be diagnosed as suffering acquired demyelinating polyneuropathy. Id. at *4 (first citing Ex. 12, at 66, ECF No. 6-2; and then citing Ex. 6, at 41–48, ECF No. 5-6). He noted, however, that it was "unclear" whether the 2020 Tdap vaccines could have triggered this condition. Id. at *4 (citing Ex. 6, at 41–48). He prescribed a three-month course of intravenous immunoglobulin ("IVIG") infusions. Id.

Ms. Wyble's doctors also considered the possibility that she might be suffering from POEMS syndrome, a rare and complex plasma disorder that among other things, causes debilitating nerve damage, with a differential diagnosis of CIDP and monoclonal gammopathy of undetermined significance. Id. at *4 (quoting Ex. 14, at 57–62, ECF No. 6-4). By July 2021, however, Ms. Wyble's providers noted that she had been responsive to the IVIG infusions, which made it more likely CIDP was her appropriate diagnosis instead of POEMS. Id. at *5 (first citing Ex. 11, at 72–73; then citing Ex. 12, at 42–46; and then citing Ex. 14, at 27–31).

## II. Proceedings Before the CSM

Ms. Wyble filed a petition for compensation under the Vaccine Act on January 4, 2023. ECF No. 1. Shortly thereafter, she submitted her medical records and a statement of completion. ECF Nos. 5–9. Both parties submitted medical literature and expert reports on August 31, 2023. ECF Nos. 16–26.

### A. Petitioner's Experts

Ms. Wyble submitted an expert report prepared by Dr. Joseph Jeret, a neurologist, as well as two expert reports authored by Dr. Noga Or-Geva, neuroimmunology research scientist. Decision at *5–10. The opinions expressed in these expert reports are described in some detail in the CSM's opinion. To summarize, both Dr. Jeret and Dr. Or-Geva opined that Ms. Wyble suffered from CIDP. Dr. Jeret characterized Ms. Wyble's CIDP as the "chronic counterpart" to Gullian-Barré Syndrome ("GBS"), a rare and acute autoimmune condition where the immune system attacks the myelin sheath, causing, among other things, weakness and numbness. Id. at *5 (quoting Ex. 20, at 2–3, ECF No. 16-1); see also Gamboa-Avila, 166 F.4th at 1320 (defining GBS). He observed that both conditions are "immune mediated, driven in part by damaging inflammation, involve demyelination (damage to a nerve's myelin sheath), and impact more than one nerve (hence 'polyneuropathy')." Id. As the CSM observed, Dr. Jeret "deemed molecular mimicry . . . an 'immune error' by which demyelinating neuropathies like GBS or CIDP could occur." Id. (quoting Ex. 20, at 16). Dr. Jeret also opined that, based on Ms. Wyble's medical history, the Tdap vaccine Ms. Wyble was administered likely did cause her injury. Id. at *6

(quoting Ex. 20, at 16–17). And, he found, the onset date of her injury, approximately 28 days after she was vaccinated, supported the conclusion that the vaccine caused her CIDP. Id.

Dr. Or-Geva concurred with Dr. Jeret's hypothesis. She theorized that certain components of the Tdap vaccine—mainly the tetanus toxin and the pertussis antigens—mimic the molecules present in the myelin sheath. Id. at *7 (citing Ex. 22, at 30, ECF No. 18-1); see also id. at *8 (citing Ex. 22, at 30). According to both Dr. Jeret and Dr. Or-Geva, the mimicry mechanism causes an autoimmune response in which the immune system attacks the myelin sheath in addition to the cells infected with tetanus or pertussis, causing an autoimmune response that can result in neuropathy. Id. at *8 (citing Ex. 22, at 30); see also Gamboa-Avila, 166 F.4th at 1320 (explaining molecular mimicry).

Like Dr. Jeret, Dr. Or-Geva compared CIDP to GBS. Compare Decision at *5 (citing Ex. 20, at 2–3), with id. *7 (citing Ex. 22, at 23) (comparing CIDP antigens to those found in patients with GBS). GBS has been credibly linked to the influenza vaccine. Decision at *21; see also Gamboa-Avila, 166 F.4th at 1321 (citing National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, 82 Fed. Reg. 6294, 6295 (Jan. 19, 2017)) (observing that the influenza-GBS connection became so well accepted that the Department of Health and Human Services included the combination on the Vaccine Injury Table).

To support her theory regarding molecular mimicry, Dr. Or-Geva "conducted BLAST searches to analyze potential structural similarities between the Tdap vaccine and CIDP." Decision at *8 (citing Ex. 22, at 29, ECF No. 18-1). Based on the results of the searches, Dr. Or-Geva concluded that "the structural and sequence similarities between components of the Tdap vaccine and proteins associated with CIDP, strongly suggest molecular mimicry at play" that could instigate autoimmune responses leading to CIDP. Id. (citing Ex. 22, at 29–30). Such similarities, in her view, "could instigate autoimmune responses, leading to the production of autoantibodies against CIDP-related proteins, especially in individuals who develop CIDP post-vaccination." Id. Those with underlying sensitivities from genetic and environmental factors could also be more likely to experience adverse reactions. Id.

### B. The Government's Experts

The government filed two expert reports, one prepared by Dr. Subramaniam Sriram and another prepared by Dr. You-Wen He. Dr. Sriram disputed the conclusion of Ms. Wyble's experts that Ms. Wyble's Tdap vaccine caused her CIDP. Id. at *10 (citing Ex. B at 10 [hereinafter Sriram Rep.], ECF No. 30-2); see also id. at *11 (first citing Sriram Rep. at 10; and then citing Ex. 6, at 43). In his view, her CIDP was more likely a "[monoclonal gammopathy of undetermined significance] associated form of peripheral neuropathy." Id. at *10 (citing Sriram Rep. at 8). He noted that there is a well-documented association between peripheral neuropathies and monoclonal gammopathy (a blood disorder where plasma cells produce too much M protein). Id. at *11 (first citing Sriram Rep. at 9; then ECF No. 34-4; and then citing ECF No. 34-2). Dr. Sriram hypothesized that Ms. Wyble experienced symptoms of monoclonal gammopathy of undetermined significance including pain, dysesthesia, and cramps, and he asserted that in a "meaningful minority" of monoclonal gammopathy of undetermined significance patients, a neuropathy like CIDP could develop slowly, initially affecting the lower extremities. Id. (first citing Sriram Rep. at 9; and then citing Ex. B, Tab 7, ECF No. 34-7).

Dr. He acknowledged the existence of evidence showing that CIDP has multiple triggers. Id. at *12 (citing Ex. A at 5 [hereinafter He Rep.], ECF No. 30-1). However, he concluded that relevant studies did not supply "any evidence causally linking the Tdap vaccine to the development of CIDP." Id. Further while he agreed with Dr. Jeret that Ms. Wyble's CIDP had a temporal relationship with her Tdap vaccine, he also pointed out that her illness had a temporal relationship with multiple diseases prior to her vaccination. Id. (citing He Rep. at 6).

As described in the CSM's decision, Dr. He also expressed doubt regarding the molecular mimicry theory Dr. Or-Geva endorsed. He observed that the "theory has been strongly challenged by scientific evidence from large sequencing of proteomes of microbial pathogens that demonstrate massive peptide sharing between viral and human proteomes" and "there are known scientific facts that strongly argue against the theory." Id. at *12–13 (quoting He Rep. at 7–9) (first citing Ex. A, Tab 8, ECF No. 33-8; and then citing Ex. A, Tab 6, ECF No. 33-6). He maintained that no reliable evidence associated the Tdap vaccine and CIDP. He further stated that "mere sequence homology" like Dr. Or-Geva's BLAST research "is insufficient to conclude a causal relationship between vaccination and the development of autoimmune diseases" because if autoimmunity was likely based solely on amino acid sequence similarity, Dr. Or-Geva's BLAST research "would result in a 100% autoimmune disease rate in the general population after either infection or vaccination, according to the molecular mimicry theory." Id. (first citing He Rep. at 6; and then citing He Rep. at 9).

## III. The CSM's Decision

The CSM concluded that no hearing was warranted and that the case could be resolved on the record. He issued his Decision denying entitlement on February 27, 2026.

The CSM found that Ms. Wyble failed to satisfy Althen prong 1. He noted that the "Federal Circuit has consistently rejected the contention that [prong 1] can be satisfied merely by establishing the proposed causal theory's scientific or medical plausibility." Id. at *17 (collecting cases). Further, he observed that he had by now "several times determined that existing medical science does not support the contention that the Tdap vaccine can likely (i.e., be preponderantly shown to) cause CIDP." Id. at *23 (first citing DeVaughn v. Sec'y of Health & Hum. Servs., No. 22-832V, 2025 WL 758128, at *18–21 (Fed. Cl. Spec. Mstr. Feb. 10, 2025); then citing Howard v. Sec'y of Health & Hum. Servs., No. 16-1592V, 2022 WL 4869354, at *23–26 (Fed. Cl. Spec. Mstr. Aug. 31, 2022), mot. for review denied, 2023 WL 4117370 (Fed. Cl. May 18, 2023), aff'd, 2024 WL 2873301 (Fed. Cir. June 7, 2024); and then citing Houston v. Sec'y of Health & Hum. Servs., No. 18-420V, 2021 WL 4259012, at *17–18 (Fed. Cl. Spec. Mstr. Aug. 19, 2021)).

The CSM acknowledged that GBS has been credibly linked to the influenza vaccine. Decision at *21. He also observed that some special masters had found an association between the influenza vaccine and CIDP. Decision at *22 (citations omitted). The CSM explained, however, that "it remains the case that CIDP and GBS are separate, immune-mediated polyneuropathies, even if they share many features." Id. (citing Houston, 2021 WL 4259012, at *17). Therefore, he found it "improper when deciding a Vaccine Act claim to treat CIDP and GBS as interchangeable." Id. (first citing Nieves v. Sec'y of Health & Hum. Servs., No. 18-1602V, 2023 WL 3580148, at *36 (Fed. Cl. Spec. Mstr. May 22, 2023), mot. for review denied, 167 Fed. Cl. 422 (2023); and then citing Howard, 2022 WL 4869354, at *22).

The CSM acknowledged that the evaluation of any Tdap-CIDP connection theory is a case-specific and fact-specific inquiry. Decision at *23 ("I readily acknowledge that different facts from a person's medical record could produce a different outcome."). At the same time, however, he observed that prior decisions by special masters had found that "a Tdap vaccine-CIDP association is not all that well-established—and absent new scientific or medical evidence on the subject not previously considered, these prior determinations support a denial of entitlement in future cases." Id. He noted that he had considered the association between Tdap and CIDP in prior cases and had "not found it to be reliably established with sufficient preponderant evidence." Id.

The CSM explained why he found no reason in this case to depart from his prior views. He acknowledged that Ms. Wyble's case "involves a slightly different group of experts, and some items of literature not previously reviewed." Id. at *24. But he characterized these as "nothing particularly new" and concluded that "the outcome is—appropriately—the same." Id. In particular, he noted that while Dr. Or-Geva's reports contained "articulately-presented opinions, and are thorough in scope, [] overall they largely repeat the kinds of contentions I have encountered before—repeatedly. There is nothing novel set forth in those reports that would suggest revisiting this causation theory a fifth time." Id.

The CSM further held that Ms. Wyble did not meet her burden to establish that her vaccine caused her autoimmune condition under the second Althen prong. He found, for example, that Ms. Wyble did not present evidence of "any unusual inflammatory response to the vaccine" and that her medical providers largely did not support the idea that the Tdap vaccine caused her CIDP. Id. at *25. He pointed out that her "constellation of preexisting comorbidities also greatly complicates the picture," opining that Ms. Wyble's "overall health picture makes it difficult to single out the vaccine as the triggering factor." Id. Further, he noted that Ms. Wyble suffered from an infection in December 2020 before her CIDP symptoms manifested later that month, which could be another possible cause of her autoimmune condition. Id. He concluded that there was not enough evidence to establish preponderantly that the Tdap vaccine caused Ms. Wyble's illness—or for that matter to establish another cause for her injury. Id.

## IV. The Motion for Review

On March 30, 2026, Ms. Wyble filed a motion for review of the CSM's Decision. Pet'r's Mot. for Rev., ECF No. 47; Pet'r's Mem. Her motion raised three objections to his ruling, all of them posing challenges to the CSM's determinations regarding general causation under the first Althen prong, including: (1) that the CSM allegedly "ignored" research findings by Dr. Or-Geva that Ms. Wyble contends support her theory of molecular mimicry and that have not been presented in other cases, Pet'r's Mem. at 5–7, (2) that the CSM "used an incorrect legal standard in assessing [her] evidence of general causation" when he found that—to meet her burden of proof under Althen prong 1—Ms. Wyble had to show more than that her theory of general causation was "biologically plausible," id. at 8–16, and (3) that in analyzing the evidence supporting general causation the CSM improperly required the production of evidence that is not available at this time regarding the causes of CIDP and "precisely how the vaccination had interacted with, and ultimately damaged, Petitioner's peripheral nervous system." Id. at 17.

Based on these objections, Ms. Wyble has asked the Court to "set aside the Special Master's conclusions of law found to be not in accordance with law, and to render a finding that Petitioner satisfied her burden on the issue of general causation (Althen prong 1), or, in the

alternative, to VACATE and REMAND the case to the Special Master for further action as needed." Id. at 20. She did not request that the Court set aside the CSM's finding that Ms. Wyble had not satisfied her burden of proof as to Althen prong 2. See id.

The government filed its response to the Motion for Review on April 28, 2026. Resp't's Mem. in Resp. to Pet'r's Mot. for Rev., ECF No. 49. In its response, the government defended the CSM's finding that Ms. Wyble failed to meet her burden under Althen prong 1. It also asserted in a footnote, that even had she done so, "her failure to meet her burden under Althen [p]rong II would result in denial of entitlement." Id. at 14 n.7.

On August 19, 2026, the Court directed Ms. Wyble to file a reply "addressing the government's contention that, even assuming that she has satisfied her burden under the first Althen prong, her failure to do so with respect to the second Althen prong would result in a denial of entitlement." Order at 1–2, ECF No. 51. Ms. Wyble filed her reply on August 28, 2026. Reply Mem. on Limited Topic, in Supp. of Pet'r's Mot. for Rev. of the Spec. Mstr.'s Decision of 27 Feb. 2026 [hereinafter Pet'r's Reply], ECF No. 52.

## DISCUSSION

### I. Jurisdiction

The National Vaccine Injury Compensation Program provides a no-fault compensation system for vaccine-related injuries and deaths. Figueroa v. Sec'y of Health & Hum. Servs., 717 F.3d 1314, 1316–17 (Fed. Cir. 2013). A petition seeking compensation under the Vaccine Act is filed in the Court of Federal Claims, after which the Clerk of the Court forwards it to the CSM for assignment to a special master. 42 U.S.C. § 300aa-11(a)(1). The special master to whom the petition is assigned "issue[s] a decision on such petition with respect to whether compensation is to be provided under the [Vaccine Act] and the amount of such compensation." Id. § 300aa-12(d)(3)(A).

The Vaccine Act grants the Court of Federal Claims jurisdiction to review the decisions of special masters with authority to:

> (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
> (B) set aside any findings of fact and conclusions of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
> (C) remand the petition to the special master for further action in accordance with the court's direction.

Id. § 300aa-12(e)(2); accord RCFC App. B, Vaccine Rule 27.

To obtain review of a special master's decision, a petitioner must file a motion for review with the clerk within 30 days after the date the decision is filed. RCFC App. B, Vaccine Rule 23(a). "A motion for review must be accompanied by a memorandum of numbered objections to the decision" no longer than 20 pages. Id. Vaccine Rule 24(a), 25(a)(3). That memorandum must "fully and specifically state and support each objection to the decision, including specific citations to the record created by the Special Master (e.g., to specific page numbers of the

transcript, exhibits, or other papers)" and "set forth any legal argument the party desires to present to the reviewing judge." Id. Vaccine Rule 24(b)(1)–(2).

## II. Standard of Review

The Court of Federal Claims has "a duty to ensure that the special master has properly applied Vaccine Act evidentiary standards, 'considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for [his] decision.'" Stratton v. Sec'y of Health & Hum. Servs., 138 F.4th 1368, 1371 (Fed. Cir. 2025) (alteration in original) (quoting Paluck v. Sec'y of Health & Hum. Servs., 786 F.3d 1373, 1380 (Fed. Cir. 2015)). The court reviews a special master's legal determinations de novo. Cerrone, 146 F.4th at 1119 (citing Moberly v. Sec'y of Health & Hum. Servs., 592 F.3d 1315, 1321 (Fed. Cir. 2010)). In contrast, judicial review of a special master's factual determinations is circumscribed and "uniquely deferential." Milik v. Sec'y of Health & Hum. Servs., 822 F.3d 1367, 1376 (Fed. Cir. 2016) (quoting Hodges v. Sec'y of Health & Hum. Servs., 9 F.3d 958, 961 (Fed. Cir. 1993)). The court may only set aside a special master's factual determinations where they are arbitrary, capricious, or reflect an abuse of discretion. Cerrone, 146 F.4th at 1119 (citing Moberly, 592 F.3d at 1321). The reviewing court does not reweigh the evidence, examine its probative value, or judge the credibility of the witnesses because those "are all matters within the purview of the fact finder." Porter v. Sec'y of Health & Hum. Servs., 663 F.3d 1242, 1249 (Fed. Cir. 2011) (citing Broekelschen v. Sec'y of Health & Hum. Servs., 618 F.3d 1339, 1349 (Fed. Cir. 2010)). Thus, if a special master "has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision,' then reversible error is 'extremely difficult to demonstrate.'" Milik, 822 F.3d at 1376 (quoting Hines v. Sec'y of Health & Hum. Servs., 940 F.2d 1518, 1528 (Fed. Cir. 1991)).

## III. Ms. Wyble's Motion for Review

As noted above, Ms. Wyble has the burden to prove causation-in-fact by establishing by "preponderant evidence . . . (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Gamboa-Avila, 166 F.4th at 1320 (emphasis omitted) (quoting Althen, 418 F.3d at 1278). She must prove all three Althen prongs to establish her entitlement to compensation. Cerrone, 146 F.4th at 1120 (quoting Boatmon, 941 F.3d at 1355) (citing Oliver, 900 F.3d at 1361).

The CSM evaluated Ms. Wyble's arguments under the first and second Althen prongs. He found that Ms. Wyble failed to supply a medical theory showing that it is more likely than not that the Tdap vaccine can cause CIDP (general causation) and that she also failed to meet her burden to establish that her November 15, 2020 Tdap vaccine likely was the cause of her CIDP (specific causation).

Ms. Wyble's motion for review, as noted above, focuses entirely on the CSM's finding that she failed to establish a medical theory linking the Tdap vaccine and CIDP under the first Althen prong. Her argument is that the CSM improperly elevated her burden of proof under the first Althen factor by requiring her to prove more than that it was biologically plausible that molecular mimicry could lead to the Tdap vaccine causing CIDP. She also complains that the CSM improperly treated his own prior decisions regarding whether the Tdap vaccine can cause CIDP as though they were binding legal precedent.

Ms. Wyble's argument regarding her burden of proof under the first Althen prong is inconsistent with controlling precedent. The court of appeals has expressly rejected the idea that a vaccine petitioner need only show it was "biologically plausible" that a vaccination caused her injury. Cerrone, 146 F.4th at 1121. "[S]imply identifying a 'plausible' theory of causation is insufficient for a petitioner to meet her burden of proof." Cerrone, 146 F.4th at 1121 (quoting LaLonde v. Sec'y of Health & Hum. Servs., 746 F.3d 1334, 1339 (Fed. Cir. 2014)) (first citing Boatmon, 941 F.3d at 1360; then citing W.C. v. Sec'y of Health & Hum. Servs., 704 F.3d 1352, 1356 (Fed. Cir. 2013) (holding that a theory that is at best "plausible" does not satisfy petitioner's burden of proof); and then citing Moberly, 592 F.3d at 1325)). "Instead, the statutory standard of preponderance of the evidence requires a petitioner to demonstrate that the vaccine more likely than not caused the condition alleged." LaLonde, 746 F.3d at 1339 (citing Moberly, 592 F.3d at 1322).

Also unpersuasive is Ms. Wyble's argument that the CSM "ignored" and gave "short shrift" to new evidence Dr. Or-Geva provided based on the BLAST searches she conducted. Pet'r's Mem. at 5–6. The CSM clearly did not ignore this evidence; to the contrary, he discussed it in his opinion at some length and explained its significance. Decision at *8, 24. The fact that he did not find the research findings particularly compelling or sufficient to change his views regarding whether the Tdap vaccine can cause CIDP was consistent with the views of the government's expert, Dr. He.

Finally, the Court rejects Ms. Wyble's contention that there was something improper about the CSM relying on his previous decisions when he found that Ms. Wyble had failed to satisfy the first Althen prong. Pet'r's Mem. at 3 (accusing the CSM of "appl[ying] the doctrine of stare decisis to scientific factual matters."). When reviewing evidence regarding causation, special masters are expected to use the expertise they have developed in cases raising similar issues and arguments. Cf. Gamboa-Avila, 166 F.4th at 1323–24 (explaining that the special masters should consider a related-case rule to prevent inconsistent rulings on similar cases). To be sure, special masters must take into consideration any relevant new evidence that might contradict the conclusions reached in other cases—as the CSM did here with respect to Dr. Or-Geva's BLAST research. But beyond that, there is no principle that required the CSM to forget everything he learned in prior cases when he considered the evidence in the present one.

In any event, even if these objections (and the others in her motion for review) were well-taken, the Court would nonetheless have to deny Ms. Wyble's motion because she did not challenge the CSM's finding under the second Althen prong that she failed to establish preponderantly that the Tdap vaccine in fact did cause her illness. Indeed, Ms. Wyble acknowledges that she made a deliberate decision to address only those "legal errors" she deemed "fundamental to the Chief Special Master's global view of the case." Pet'r's Reply at 1. She explains that she decided not to separately address specific causation "given space limits" due to the Vaccine Rule's requirement that memoranda be no longer than 20 pages without leave from the court. Id.; cf. RCFC App. B, Vaccine Rule 25(a)(3).

If, in fact, Ms. Wyble failed to address prong 2 because of the 20-page limit on motions for review, that was unwise on her part. The Vaccine Rules, as noted, expressly require movants to "fully and specifically state and support each objection to the decision," and to "set forth any legal argument the party desires to present to the reviewing judge." Id. at Vaccine Rule 24(b)(1). Parties routinely request and receive permission to exceed the stated page limits in Vaccine cases.

Cf. RCFC App. B, Vaccine Rule 24(b)(3) ("The memorandum must . . . absent leave of the court, be limited to 20 pages and conform to the provisions of RCFC 5.4.").

Arguments not presented in a petitioner's initial memorandum as required by the Vaccine Rules are waived. E.g., Giannantonio v. Sec'y of Health & Hum. Servs., 168 Fed. Cl. 84, 92–93 (2023) (explaining a petitioner who fails to bring up an argument in his opening memorandum waives that argument); Civatte v. Sec'y of Health & Hum. Servs., 165 Fed. Cl. 520, 524 n.2 (2023) (first citing RCFC App. B, Vaccine Rule 24(a)–(b)(1); and then citing Germaine v. Sec'y of Health & Hum. Servs., 155 Fed. Cl. 226, 228 n.3 (2021)) (finding petitioner waived challenge to element of special master's decision included in footnote of opening brief "by failing to include it in his list of objections and by not adequately raising it in his filings"). Accordingly, Ms. Wyble has waived any objection to the CSM's adverse findings as to the second Althen prong. "Because that finding, on its own, is sufficient to justify a denial of compensation, the Court must sustain the special master's decision." Giannantonio, 168 Fed. Cl. at 93 (collecting cases); see also SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived."); Skorupska v. Sec'y of Health & Hum. Servs., No. 16-1517V, 2026 WL 2639166, at *33 (Fed. Cl. Aug. 11, 2026) (first citing Angel v. United States, 169 Fed. Cl. 552, 555 (2024); and then citing Giannantonio, 168 Fed. Cl. at 93) ("Generally, and in vaccine cases, the submission of a new argument for the first time in a reply brief before this court need not be considered by this court and raises further questions regarding the credibility of the newly raised argument.").

Finally, the Court notes that the Vaccine Act and the Vaccine Rules do not contemplate that the party seeking review of a special master's decision will have the opportunity to reply to the opposing party's response to their motion for review. In this case, the Court exercised its discretion to permit such a reply to give Ms. Wyble the opportunity to address the government's contention that, even assuming she had satisfied her burden under the first Althen prong, her failure to do so with respect to the second would result in a denial of entitlement.

Instead of addressing that question, however, Ms. Wyble has chosen to use her reply brief primarily to present—for the first time—her objections to the CSM's ruling with respect to Althen prong 2. See Pet'r's Reply at 2–9. These include, among others, contentions that the CSM improperly weighed or evaluated several pieces of evidence in his decision to deny entitlement under the second Althen prong and that he applied too stringent a burden of proof on Ms. Wyble with respect to prong 2.

As noted, however, these arguments were waived when they were not presented in the motion for review. See Giannantonio, 168 Fed. Cl. at 93 (quoting Novosteel SA v. U.S., Bethlehem Steel Corp., 284 F.3d 1261, 1274 (Fed. Cir. 2002)). The Court's purpose in allowing Ms. Wyble to file a reply was not to give her a chance to argue for the first time that the CSM's findings with respect to prong 2 were flawed, but to give her a chance to explain why she believed that she might be found entitled to compensation, notwithstanding that the CSM's ruling on prong 2 remains undisturbed. It does not appear to the Court that she has taken advantage of the opportunity provided. The Court concludes, therefore, that even were it to find merit in her challenges to the CSM's findings with respect to general causation (and it does not), her failure to seek relief with respect to his findings regarding specific causation is ultimately fatal to her claim.

## CONCLUSION

For the reasons set forth above, Ms. Wyble's motion for review, ECF No. 47, is **DENIED**. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge